(C.D. 2668)

ARNHOLD CERAMICS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 4, 1966)

*Siegel, Mandell & Davidson* (*David Serko* and *Allan H. Kamnitz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, consolidated for the purpose of trial, involve the

proper classification of certain high pressure presses, parts, and accessories, used for the manufacture of ceramic parts. The presses involved were designated as TPA 2, 4, and 45.

The merchandise was classified by the collector of customs at the port of New York under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device or parts thereof and was assessed with duty at the rate of 13¾ per centum ad valorem.

Plaintiff, by timely protests and oral amendments, claims the presses to be properly subject to duty at the rate of 11½ per centum ad valorem under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as machines, finished or unfinished, not specifically provided for, other, or as parts thereof under said provision and that the electric motors accompanying said machines are properly dutiable at 10½ per centum ad valorem under paragraph 353 of said act, as modified by said sixth protocol, *supra*, as electric motors.

The pertinent portions of the paragraphs involved herein read as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

  \*    \*    \*    \*    \*    \*    \*

  Other \* \* \* _____ 13¾% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

  \*    \*    \*    \*    \*    \*    \*

Motors:

  Of more than $\frac{1}{10}$ horsepower but less than 200 horsepower_____ 10½% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Machines, finished or unfinshed, not specially provided for:

  \*    \*    \*    \*    \*    \*    \*

  Other (\* \* \*)_____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part.    The rate for the article of which they are parts.

The record herein consists of the testimony of one witness called on behalf of plaintiff, two illustrative exhibits received in evidence as plaintiff's illustrative exhibits 1 and 2, and a brochure received in evidence as defendant's exhibit A.

At the trial, a severance was granted with respect to certain parts other than the so-called TPA 2 parts, which appear on entry 925305 covered by protest 61/20843. Counsel for the respective parties also stipulated that, should the court find the merchandise not to be properly classified under paragraph 353, with the exception of the electric motors, the merchandise is properly a machine within the tariff understanding of that term.

Mr. Walter A. Gort, a ceramic engineer and vice president in charge of engineering of a subsidiary corporation of plaintiff herein, testified that the business of the corporation which employed him was the importing, selling, and servicing of compacting presses. The witness stated he was familiar with the merchandise since 1953 when the first models were built and that said compacting presses are used for compacting any kind of powder to form a solid part. The photograph received in evidence as plaintiff's illustrative exhibit 1 was stated to be a picture of the presses involved herein except for size, and plaintiff's illustrative exhibit 2 is a photograph of the TPA 45 press.

The involved compacting press, in order to produce a part from powder, operates in the following manner: The die cavity is filled with powder by a fill mechanism and the die cavity is then compressed between the upper and lower rams to provide compaction from both directions. There is a hand-operated crank which is utilized to lower the upper ram in order to determine the proper pressure. After this pressure is determined, the machine is electrically operated. The TPA 2 and 4 were imported with a drive motor and the TPA 45 was imported with a drive motor as well as a motor to operate the oil pump and the electric solenoid magnet. The testimony establishes that the drive motor consists of a standard electric motor secured by four bolts to a frame and which transmits the power to the machine by a belt and pulley arrangement. This arrangement is clearly depicted in plaintiff's illustrative exhibit 1. The motor-driven oil pump contained on the TPA 45 press was stated not to be essential and could be replaced readily by means of a belt and pulley arrangement to any other source of power. The evidence also establishes that the drive motor on the three models can easily be replaced with another form of power by the removal of four bolts and the replacement of the electric motor with any other source of power connected to the belt and pulley arrangement. The record also establishes that the drive motors are standard electric motors.

The electric solenoid magnet was stated to be an optional feature which is included or left off at the request of the importer, and the

machine will operate with or without this item. The solenoid magnet is connected to the motor and is used as a safety device to disengage the linkage of the clutch when too much pressure is applied.

In addition to the foregoing features there is also contained an electric switch which activates the motor to permit the machine to be operated. Defendant's exhibit A illustrates the switch which contains two buttons and three lights. The buttons turn the machine on and off and the lights indicate various conditions which are present in the machine. The red light indicates that you are connected to a source of power; the white light indicates that the full power of the motor is engaged to the flywheel of the press; the green light is connected to the solenoid magnet and goes on in the event that the magnet is energized.

The witness also indicated that the presses are sometimes imported without the motors and without the solenoid magnet. In the instant cases, however, the motors and the solenoid magnet were imported.

Based upon the foregoing record, it is the contention of plaintiff herein that said presses do not constitute for tariff purposes articles having as an essential feature an electrical element or device and that since the parties have entered into a stipulation to the effect that if said presses do not fall within the purview of paragraph 353, as modified, *supra*, they do fall within the tariff description of the term "machine," that said articles are machines, and the motors being of standard design are subject to separate classification under the *eo nomine* provision for motors, as contained in paragraph 353, as modified, *supra*. Since no separate values have been found by the appraiser for the motors and the presses separately, the appraisement is, therefore, claimed to be void, the liquidation of the entry premature, and the protest being premature should be dismissed and the matter remanded to a single judge for the purpose of determining the proper dutiable value of the merchandise pursuant to 28 U.S.C., section 2636(d).

In order for the court to determine whether the appraisement should have set forth values separately for the motors and the presses, it must first determine whether the imported merchandise does have as an essential feature an electric element or device within the purview of paragraph 353, as modified, *supra*. The criteria for determination of whether an article falls within this category were set forth in *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, and have been followed in numerous cases. For an article to fall within the purview of said provision as contained in paragraph 353, as modified, *supra*, the electrical feature must be essential and without which the article will not function normally for the purpose intended. The court in the case of *Keer Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336, in interpreting the criteria as set forth in the *Dryden* case,

*supra,* stated: "*\* \* \** If, however, the substitution of nonelectrical features for the electrical ones can be made without substantial modification or reconstruction of the functional properties of the machine, it is not an article having as an essential feature an electrical element or device, within the meaning of said paragraph 353. \* \* \*" See also *Ralph C. Coxhead Corp.* v. *United States,* 22 CCPA 96, T.D. 47080; *W. C. Sullivan & Company* v. *United States,* 46 Cust. Ct. 31, C.D. 2229, *Frank P. Dow Co., Inc., and Evergreen Distributors, Inc.* v. *United States,* 52 Cust. Ct. 235, Abstract 68234.

In the case at bar, the record establishes that the motive power for the presses is transmitted by a belt and pulley arrangement. The imported presses contain electric motors for this purpose. It has, however, been satisfactorily established that said electric motors may be readily removed by unscrewing the four bolts holding the electric motor to a frame and the removal of the belt from the pulley attached to the motor. In such event, another source of power other than electricity would have to be attached to said belt, and the presses would function normally without any substantial modification or reconstruction of the functional properties of the machine.

Insofar as the press designated as TPA 45, which in addition contains an electric motor which drives a lubricating pump and a solenoid magnet which is used as a safety device, we are of the opinion for the reasons set forth, *infra,* that said items are not such as would relegate the presses to classification under said paragraph 353, as modified, *supra.* The record establishes that the electric motor utilized for driving the lubricating pump on the TPA 45 may be readily removed and replaced with a belt and pulley arrangement without any substantial modification or reconstruction of the press itself. The solenoid magnet was established to be an optional feature and only incorporated when desired by the importer. It was further shown that said press would and does operate without the solenoid magnet. The only other so-called electrical features involved in all of the presses are the electric switches contained thereon. It is obvious from the record that, if the electric motor used for the motive power is replaced by another source of power, the electric switches, which merely control the motors, would not be necessary. The same reasoning applies to the various lights contained on the electric switch which merely give an indication of various conditions relating to electrical functioning of the presses.

In view of the foregoing, we are of the opinion that the imported compacting presses are not such as are properly subject to classification under the provisions of paragraph 353, as modified, *supra.* Counsel for the respective parties have stipulated that, in the event the court determines that said presses are not within the purview of paragraph

353, as modified, *supra*, they fall within the tariff terminology of the term, "machine." The foregoing is of course a stipulation of law and is not binding on the court. However, it is clear from the description of its operation as contained in the record that said presses do fall within the tariff provision for "machine" as contained in paragraph 372, as modified, *supra*, as claimed. *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786; *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820.

Plaintiff also contends that the motors accompanying the imported presses are properly subject to classification under the *eo nomine* provision for motors as contained in paragraph 353, as modified, *supra*. In our recent decision in *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 325, C.D. 2644, we made the following comment with respect to claims for separate classification of motors:

> * * * In the case of *Henry A. Wess, Inc.* v. *United States*, 43 Cust. Ct. 78, C.D. 2107, certain woodworking machines containing electric motors were classified under the same provisions of said paragraph 353 of the Tariff Act of 1930, as modified, *supra*, and claimed to be properly duitable separately as machines under paragraph 372 of said act, as modified, *supra*, and the electric motors under paragraph 353 of said act, as modified, *supra*. The court therein found the articles separately dutiable and relied upon its decision in *Clarence S. Holmes* v. *United States*, 37 Cust. Ct. 260, C.D. 1833, which case in turn relied upon the decision in the case of *Geo. S. Bush & Co., Inc.* v. *United States*, 41 CCPA 33, C.A.D. 525. The *Bush* case, *supra*, involved certain gas operated saws which were held to be separately classifiable for tariff purposes. The court of appeals made the following pertinent comments:

>> The record indicates that different means of attachment might or would have to be employed from that used with the imported saws should the imported engine be detached and other power producing units used. There is absolutely no evidence however, appellant declares, that the engine itself must be altered to make it function as a power producing unit for various purposes which the engine will otherwise serve, nor that the sawing mechanism itself must be altered when propelled not by the gasoline motor but otherwise by compressed air or electric power.

>> * * * * * * *

> * * * We think, however, as properly stated in *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, T.D. 39322, wherein the skins and veal of imported carcasses of calves were held separately classifiable for tariff purposes—

>> that the question herein submitted finds its answer in the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto.

In the case at bar the gasoline engine is not indispensable as the power producing element in the operation of the saws because electricity or compressed air may likewise provide the power to effect the same result; that the gasoline engine may be readily detached from the saw assembly by the removal with a monkey wrench of four or eight nuts, depending on the model of the saw; that when so detached, or in the first instance, the gasoline engine may be used for various other purposes and in various other ways, such as driving a pump or propelling a motor boat. * * *

The record herein establishes to the satisfaction of the court that the involved motors are standard motors not specifically designed for use with the imported presses. See *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849. The motors, therefore, should have been classified under the *eo nomine* provision for motors of more than $\frac{1}{10}$ horsepower but less than 200 horsepower as contained in paragraph 353 of said act, as modified, *supra*.

Since the appraisement of the contested presses was predicated on the basis that the presses and their motors constituted an entirety, no separate values for each of said items have been returned by the appraiser. Accordingly, the appraisement herein is invalid and void and the liquidation of the entry premature and a nullity, by virtue of the absence of a legal appraisement. These protests are, therefore, dismissed in accordance with the provisions of 28 U.S.C., section 2636(d), and the matter remanded to a single judge to determine the proper dutiable value of the presses and the electric motors in the manner prescribed by law.

Judgment will be entered accordingly.