38

**CASTELAZO & ASSOCIATES, ATWOOD IMPORTS, INC., et al.**

v.

**UNITED STATES.**

C.D. 4027; Protests 65/19582–79305, etc.

United States Customs Court,
Second Division.
June 2, 1970.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Glenn E. Harris, and Velta Meln-brencis, New York City, trial attorneys), for defendant.

Before RAO, FORD, and ROSENSTEIN, Judges.

ROSENSTEIN, Judge:

The merchandise involved in the consolidated protests herein consists of various types of woodworking machines, each imported with one or more electric motors. The machines and accompanying motors were appraised as entireties, and assessed for duty at 13¾ or 12½ per centum ad valorem, depending on the date of entry, as "Articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for," under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, or by the Trade Concessions negotiated at the 1960–61 Tariff Conference, T.D. 55615. Plaintiffs contend that the electrical equipment imported with the machines are not essential elements thereof, and that the machines are properly dutiable at 11½ or 10½ per centum ad valorem, depending on the date of entry, under paragraph 372 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, as other machines, finished or unfinished, not specially provided for, or as modified by T.D. 55615, *supra*, as other woodworking machines.

Plaintiffs subsequently "proposed" amendments claiming the motors to be classifiable under the provision for electric motors in paragraph 353. However, they "*have not pressed* the issue of the allowance" [italics supplied] (brief, page 2) of these amendments, which had been objected to by defendant, on the ground that, if successful in their primary claim, the appraisements of the machines and motors as entireties must be considered null and void and the protests remanded to a single judge to find separate values

for each item pursuant to 28 U.S.C. § 2636(d).[1]

 The affirmative language used by plaintiffs has long been construed to mean the voluntary election of a party not to urge upon the court one of its claims and, hence, an abandonment or withdrawal of that claim. R. U. Delapenha & Co., Inc. v. United States, 50 Cust.Ct. 144, C.D. 2403 (1963). Therefore, we cannot reach a determination on, or consider those matters of record which might relate to, the classification of the motors as entireties separate and apart from the machines.

The interpretation and application of the phrase, "articles having as an essential feature an electrical element or device," have been the subject of considerable litigation. A leading case on this point is United States v. Dryden Rubber Co., 22 CCPA 51, T.D. 47050 (1934), which holds that, for an article to fall within the purview of the aforesaid provision, "the electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, * * *." In Keer, Maurer Company v. United States, 48 Cust.Ct. 205, 208, C.D. 2336 (1962), this court, interpreting the criteria set forth in *Dryden*, stated:

* * * In other words, if an article has been designed to operate by electrical power, and cannot normally function otherwise, it is an article with an essential electrical feature, within the scope of paragraph 353. If, however, the substitution of nonelectric features for the electrical ones can be made without substantial modification or reconstruction of the functional properties of the machine, it is not an article having as an essential feature an electrical element or device,

within the meaning of said paragraph 353. * * *

See also Ralph C. Coxhead Corp. v. United States, 22 CCPA 96, T.D. 47080 (1934); Castelazo & Associates, Atwood Imports, Inc., et al. v. United States, 62 Cust.Ct. 148, C.D. 3707, 296 F.Supp. 25 (1969); Gene Miller, Atwood Imports, Inc. v. United States, 59 Cust. Ct. 212, C.D. 3125 (1967) (reversed in part on other grounds on rehearing, Id. v. Id., 63 Cust.Ct. 452, C.D. 3934 (1969)); Arnhold Ceramics, Inc. v. United States, 56 Cust.Ct. 416, C.D. 2668 (1966); F. B. Vandegrift & Co., Inc. v. United States, 56 Cust.Ct. 325, C.D. 2644 (1966); Frank P. Dow Co., Inc., and Evergreen Distributors, Inc. v. United States, 52 Cust.Ct. 235, Abstract 68234 (1964); W. C. Sullivan & Company v. United States, 46 Cust.Ct. 31, C.D. 2229 (1961).

Our appellate court, in the frequently cited case of United States v. Baker Perkins, Inc., R. F. Downing Co., Inc., 46 CCPA 128, C.A.D. 714 (1959), gave a narrower construction to this provision which has influenced the disposition of succeeding cases arising thereunder. The court held that the fact that an imported cocoa liquor grinding mill was to be powered by an electric motor which, from a practical, commercial standpoint, was the only motive power that could be employed for the operation of the mill, was not determinative of the issue. As it was shown that it could be operated by other than electrical power, selection of an electric motor did not make the mill an essentially electrical article.

 In short, proof that, from a *"practical commercial standpoint"* (*Baker Perkins,* 46 CPA at page 130), electricity is the only power that can be employed is not the desideratum for classification under paragraph 353: if a machine can be powered by a nonelectric force without requiring substantial mod-

---

I. 28 U.S.C. § 2636(d) provides: If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

ification, it does not have as an essential feature an electrical element or device.[2]

Furthermore, when it is shown that in changing over to another source of power most of the changes or modifications are made *outside* the machines, such as in the use of pulleys and shafts to connect the substituted mode of power to the articles, this court has held that no substantial modification of the machines is involved and that they are not essentially electrical articles. Gene Miller, Atwood Imports, Inc. v. United States, *supra*, and cases cited therein.

Nor is it essential in many instances to spell out in detail the time and cost involved in making these modifications. The court held, in Gene Miller, Atwood Imports, Inc. v. United States, *supra:*

> While the testimony did not establish either the cost of substituting another source of power or the time required to do it, the uncontradicted description of the work to be done is sufficient to indicate, *prima facie,* that the modifications required were not substantial. The situation here is quite different from that in the *Berkley Machine Company* case *supra,* where the machine was very complex and there was convincing evidence by a well-qualified expert that the machine could not be converted without substantial modifications.

As Chief Judge Rao stated, in John H. Faunce Phila., Inc. v. United States, *supra:*

> Testimony regarding the time and expense involved in the replacement of electric power is of critical importance only when the extent of change required in the substitution of other power is not apparent from a description of the work to be done or where a conflict exists between expert witnesses. * * *

With the foregoing in mind, we turn to the machines in issue, which are described on the invoices as follows:[3]

| Protest | Entry | |
|---------|-------|---|
| 65/19582 | 60394, May 1, 1962 | 1 Schubert Hydraulic Hot Platen Press, Type MRL 100, arranged for electric heating |
| 65/19583 | 59914, April 30, 1962 | 1 Schubert Hydraulic Hot Platen Press, Type MRP 10, arranged for steam heating |
| 65/19632 | 59908, April 30, 1962 | 1 Wadkin Hydro-Electric Cross-cutting and Trenching Machine, Model C.J. 4 Left Hand |

---

2. If it is also claimed that the motor is separately dutiable under the *eo nomine* provision for motors in paragraph 353, the claimant must establish that the motor is a standard or general purpose type. Such proof is a prerequisite to finding that the machine and motor constitute separate entities and, accordingly, are subject to the provisions of 28 U.S.C. § 2636 (d). Inter Maritime Fwdg. Co., Inc. v. United States, 58 Cust.Ct. 507, C.D. 3030 (1967), aff'd on reh. Id. v. Id., 60 Cust. Ct. 425, C.D. 3408 (1968). If, "despite a showing of nonessentiality from a paragraph 353 standpoint," the motor is shown to be a special purpose one dedicated to use with the machine in question, it is dutiable as a part of the machine under paragraph 372. John H. Faunce Phila., Inc. v. United States, 60 Cust.Ct. 369, 378, C.D. 3393 (1968). Absent proof as to what kind of motor is involved, the protest is overruled without affirming the classification. John H. Faunce Phila., Inc. v. United States, *supra.*

3. 1 Wadkin Double End Tenoning Machine Model W.O., in protest 65/19687, and 1 Ehemann Ked XXIII/dh4 Automatic Surface Sander 16", in protest 65/19629, were abandoned at the trial. Accordingly, we dismiss those protests insofar as they relate to the abandoned claims.

| | | |
|---|---|---|
| " " " " " | 1 | Wadkin 18″ Tilting Arbor Dimension Saw Bench, Model P.P. Complete with electrical equipment |
| " " " " " | 1 | Bursgreen 12″ Surface Planer and Joiner, Model B.F.T. Complete with electrical equipment and standard accessories |
| " " " " " | 1 | Wadkin-Bursgreen 14″ Tilting Arbor Fixed Table Dimension Saw, Model A.G.S. Complete with electrical equipment and standard accessories |
| 65/19629 65472, June 6, 1963 | 1 | EHEMANN KED XIII/Lom Universal Edge Belt Sander, complete |
| 65/19633 27731, November 14, 1962 | 1 | Wadkin 18″ Tilting Arbor Dimension Saw Bench, Model P.P. Complete with electrical equipment [Same as machine of that description in protest 65/19632] |
| " " " " " | 1 | Wadkin High Speed Radial Router, Model L.F.H. arranged for working from overhead template, having speeds of 25,-000 and 18,000 RPM and complete with electrical equipment and standard accessories |
| 65/19576 55538, April 15, 1963 | 2 | Torwegge H 34 Multiple Rip Saws, complete |
| 65/19577 60411, May 9, 1963 | 1 | Schubert Hydraulic Press, Type HH3.M |
| 65/19579 48716, March 11, 1963 | 1 | Rye Type DEB/1 Double End Boring Machine No. 155 |
| 65/19581 41054, January 21, 1963 | 6 | Rye Type PD/3 Single Spindle Drilling Units with 3″ stroke |
| " " " " " | 20 | Rye Type PD/3 Twin Spindle Drilling Units with 3″ stroke |
| 65/19687 44070, February 11, 1963 | 2 | Wadkin Hydraulic Crosscutting and Trenching Machines, Model C.J. 4 Left Hand. Complete with electrical equipment and standard accessories and having 56″ stroke [Same as Wadkin Hydraulic Crosscutting and Trenching Machine in protest 65/19632] |
| 65/19585 34716, December 19, 1962 | 1 | Rye Type H/2 Single Spindle Slot Morticer Machine No. 345 |

Plaintiffs claim that protest 65/19585 also includes the following machines listed on entry 34716 therein:

1 Rye Type T/2 Fully Automatic Tenoner, No. 253,

1 Rye Type T/2 Fully Automatic Tenoner, No. 252, and

1 Rye Type R.28 Automatic Shaping Machine, No. 387.

———◆———

This is disputed by defendant, who contends that the court's jurisdiction is limited to the aforementioned single spindle slot morticer. The protest, which consists mainly of a printed form, reads as follows:

> Notice of dissatisfaction is hereby given with and protest is hereby made against your decision, liquidation and assessment of duties at *12½% p. 353* or other rate or rates on *Woodworking machine (single slot mortiler)* [sic] covered by the entries below named, or other merchandise covered by said entries. The reasons for objection under the Tariff Act of June 17, 1930, and amendments thereto are as follows: *We claim that said merchandise is properly dutiable at 10½% under paragraph 372.*
>
> We further claim that the assessment of duties made herein is illegal and void. * * * [Emphasized words were typewritten]

■■ Section 514 of the Tariff Act of 1930 provides that a protest set forth "distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto." Judicial interpretation of this section and its similarly phrased predecessors have consistently held that, although no precise nicety of language is required, a protest must sufficiently, in view of all the circumstances, call the collector's attention to the importer's objections so that he may consider and pass upon the same. Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825 (1884) ; United States v. Macksoud Importing Co., et al., 25 CCPA 44, T.D. 49041 (1937); Lichtenstein v. United States, 1 Ct.Cust.App. 79, T.D. 31105 (1910). Although section 514 does not expressly provide that any merchandise be specified in the protest, it has been so construed as to require, in instances where more than one kind of merchandise is involved, that the claim be identified with the particular item to be challenged. United States v. Fred Gretsch Mfg. Co., Inc., 26 CCPA 267, C.A.D. 26 (1938) ; Shreve & Hays, a/c Engine Imports, Inc. v. United States, 49 Cust.Ct. 325, Abstract 67273 (1962).

Plaintiffs rely upon Amity Fabrics, Inc. v. United States, 58 Cust.Ct. 439, C.D. 3012 (1967), and defendant cites Shreve & Hays, a/c Engine Imports, Inc. v. United States, *supra*, in support of their respective positions. In *Amity Fabrics,* Meteor cloth and Mammola velveteen, two varieties of water repellent cloth, were listed on the three invoices accompanying the entry the subject of the protest. Plaintiff moved to amend the protest which read—

> Protest is made against your decision and assessment of duty or tax on *Meteor first quality plain assessed at 17¼% under Par. 904* and other similar merchandise more particularly described on entry and invoices, imported in the vessels below. * * * [Emphasized words were typewritten.]

by deleting the typed words and substituting therefor—

> all of the merchandise covered by this entry consisting of waterproof cotton cloth assessed at 17¼% under Par. 904 (Invoice #1) and at 22½% under Par. 909 (Invoices #2 and 3).

The court allowed the amendment, noting that the phrase "and other similar merchandise"—

\* \* \* lays the groundwork, as it were, only for the later enumeration of such merchandise as is of the same kind or class and not the arbitrary addition of any merchandise which happens to be listed on the invoice.

The court noted that the invoices revealed both items to be waterproof cotton cloths, and observed that their similarity in that respect should have suggested itself to the collector.

The court also distinguished the protest from the one in Shreve & Hays, *supra,* in which the specific mention of antennas and mirror frames was coupled with the printed phrase "or other merchandise covered by said entries". The "extravagant and unlimited general reference" in the printed portion, the court stated, was "excessively all-inclusive."

We, too, find that the printed phrase, "or other merchandise covered by said entries", in the subject protest is too general, that the typed-in reference to a specific item, namely, a "woodworking machine (single slot mortiler [sic])" clearly directed the collector's attention to that item only, and that he could not have been expected to consider that the classification of any other merchandise was in issue merely by reason of the general allegation concerning "other merchandise". Accordingly, we find that plaintiffs' claim in protest 65/19585 is limited to the single slot morticer.

The sole witness herein was Milton E. Gray, former president of Atwood Imports, Inc., who is a mechanical engineer and a member of various engineering and woodworking associations. He testified that he is familiar with the imported merchandise: he signed the purchase orders for them, and was involved with their sale and in setting them up for operation.

He stated that the Schubert Hydraulic Hot Platen Press, type MRL 100, illustrated in exhibit 1, is imported with a motor which is bolted to a hydraulic pressure tank and drives a hydraulic pump to develop the pump pressure; power is transmitted directly to the pump by means of a flexible mechanical coupling. The electric motor can be removed by unbolting it and putting a pulley on the then exposed hydraulic pump shaft. The pulley could be driven by a gasoline engine, diesel engine, or a line shaft powered by any means. The only modification necessary for the change would be to change the belt and connect a clutch to the source of power; no special equipment would be required, and parts would be readily available off the shelf in any city.

The control box has a hydraulic pressure gauge and a timing device which are mechanical features. The indicator lights are not essential to the operation of the press. The control panel could still be used with other sources of motive power. The machine could be stopped and started by a standard clutch mechanism on a line shaft.

The machine is a hot press which is used primarily for gluing or cementing laminates. The platens contain electrical heating elements which would be expensive to replace. It would be more practical, the witness testified, to order new steam heated platens than to convert the electrical ones. As it would be difficult to mount a motor within the space provided for the electric motor, a line shaft would be employed: in that case the primary driving force of the line shaft could be 500 feet away. In many areas of the country local codes require protective features for the belting of the line shaft.

Many of these machines were first operated in this country and in Europe, Mr. Gray stated, with a line shaft powered by a water wheel. Nearly all of the basic woodworking machines, he noted, were derived from a line shaft or foot-power drive.

The Schubert Hydraulic Hot Platen Press, Type MRP 10, in protest 65/19583, is similar to the aforementioned hot platen press, but has a greater number of platens and daylights (apertures), has a stronger design, and is equipped for

steam heated rather than electrically heated platens. The electric motor, which drives the hydraulic pump, is bolted directly on the hydraulic pressure tank by four mounting bolts. The motor could be replaced in a very short time by unbolting it and replacing it with a belt driven pulley or a line shaft. The use of other motive power would not in any way change the function of the machine. The control panel is essential to the machine but would not have to be removed if other sources of power were used. Most of the controls are related to the hydraulic system. The switch that operates the electric motor could be replaced by a line shaft clutch.

The press also contains a solenoid feature, one of the electric controls. The witness testified that it could be replaced with an air valve, which would require a source of air from a compressor which would be operated off the line shaft: this would create some additional expense. There was a possibility that it could work with a hydraulic valve but he would "have to study the circuit on it."

The Bursgreen 12″ Surface Planer and Joiner, Model B.F.T. in protest 65/19632, which is identical in performance and similar in design to the machine illustrated in exhibit 3, is imported with a motor which is bolted to a cast extension by four bolts and transmits power to a spindle by means of a belt. The electric motor could be unbolted and other sources of motive power, such as a line shaft, gasoline engine or diesel engine, substituted by using a matching pulley on the source of power. No modification of the machine itself would be necessary; it would still perform its designed function of surfacing and edging lumber. The only other electrical equipment on the machine is used to start and stop the electric motor, and can be replaced by a manually operated clutch mechanism.

The Wadkin Hydro-Electric, or Hydraulic, Crosscutting and Trenching Machine, Model C.J. 4, Left Hand, in protests 65/19632 and 65/19687, is imported with an electric motor bolted with four bolts on a plate which is part of the draw mechanism. The motor can be replaced with a ball bearing spindle with a pulley on it which is driven by another source of power. The electric motor transmits power by means of blade flanges fastened on to the motor shaft which travel at the same revolutions per minute as the motor. A line shaft could be effective as another source of power; no modification of the machine itself would be required. The ball bearing shaft which would be substituted for the motor is a standard stock item. Removal of the motor would not require removing the shaft of the interior of the motor. The extra coils and heaters imported with the machine are inexpensive items and would not be required if other sources of motive power were used. The changeover would not be expensive and would take half a day.

The Wadkin 18″ Tilting Arbor Dimension Saw, Bench Model P.P., in protests 65/19632 and 65/19633, is imported with an electric motor bolted to a frame that moves in order to lift and tilt the saw. The motor has an extended shaft which transmits power to the machine by means of a blade. The motor could be removed and replaced by a ball bearing spindle which has a similar shaft extension in the side mounting plates. This could be driven with a belt and pulley. It would not require any modification of the machine or in any way affect its use. The changeover would take a very short time and be inexpensive. The switch which activates the machine could be replaced by a manually operated clutch. Other sources of motive power could be a line shaft, gasoline engine, or water wheel power.

Four brochures illustrating the Torwegge Multiple Rip Saw, Model H 34, in protest 65/19576, the Rye DEB/1 double-end boring machine, in protest 65/19579, the Kurt Ehemann [Ehemann Ked XIII/Lom] Universal Vertical-Edge belt sander, in protest 65/19629, and the Wadkin High Speed Radial Router, Model L.F.H., in protest 65/19633, were re-

ceived in evidence as exhibits 4, 5, 8, and 9, respectively.[4]

It was stipulated that the witness would testify, as to the four machines illustrated in these exhibits and the remaining machines in issue, that—

* * * the motors are mounted by bolts, can be removed, and other sources of motive power used; that this process of change and the result after a change, would be the same as in the—his testimony relating to plaintiffs' exhibits 1, 2, and 3. His answers to all questions as to the change over to other sources of motive power would be substantially the same as he had previously testified, as to plaintiffs' exhibits 1, 2, and 3. [R. 38–39.][5]

and that—

* * * if he were asked those questions he would have given substantially the same answers, as to the rest of the merchandise involved in this litigation. [R. 39–40.]

The witness conceded on cross-examination that, as the shapers, boring machines, and sanders in exhibits 3, 5, and 8, respectively, produce bits of wood and wood dust, it would be inefficient because of the potential fire hazard to place an individual gasoline motor nearby, but that one could be placed remotely and priven by shaft and belt. If properly placed, the shafting and motor would not interfere with the operation of the machine.

The Rye double-end boring machine, illustrated in exhibit 5, has two motors on top which impart a rotary motion to the cutterhead. That rotary motion could be substituted, Mr. Gray testified, by any kind of a bearing spindle carrying the same type of cutterhead and rotorhead, and could be driven from an overhead line shaft by pulleys and belts.

He stated that every toothed tool has its best cutting speed, but compromises, which are particularly involved with electric motors, are not as great where selection of a drive and pulley is available. There are various ways of controlling speed but if one is unwilling to make a compromise more than one pulley or different types of cutterheads must be used. It is not more difficult to control the speed of a gasoline engine than that of an electric motor.

The witness testified that where a line shaft is used it is still possible to maintain the tension on the pulley shaft, even though the boring units themselves are movable. The air source on the machine is external. He also stated that it is possible, using other sources of motive power, to have all the drilling machines in issue operate at the desired speed.

The evidence establishes that the motor could be removed from the Schubert Hydraulic Hot Platen Press, Type MRL 100, and other power substituted without substantial modification of the machine *per se*. However, the witness admitted that it would be almost as expensive to change the electrically heated platens to other sources of heat as to install new ones. The actual costs and mechanics of conversion or replacement, and the labor involved, which might be quite substantial, are not indicated. The record is also silent on whether a source to supply the steam, or additional plumbing and fuel lines would be necessary. See Castelazo & Associates, Atwood Imports, Inc., et al. v. United States, *supra*. Therefore, we find that plaintiffs have failed to establish that this press could be operated without substantial modification by motive power other than electricity.

The electric motor bolted to the Schubert Hydraulic Hot Platen Press, Type MRP 10, may be unbolted and easily replaced by another source of motive power. However, the record is unclear

---

4. Defendant's objection to the admission of brochures (exhibits 6 and 7 for identification) depicting machines held to be without the scope of protest 65/19585 is sustained.

5. There is no exhibit 2 in the record. Exhibit 2 for identification was withdrawn by plaintiffs.

as to the manner of replacement of the electric solenoid feature with an air valve or, possibly, a hydraulic valve, and whether this would constitute a modification of the machine *per se* or a modification apart from the machine. If work on the press itself is required, it is not indicated whether or not this would be substantial: the costs of such conversion and the expenditure of time involved are not shown. Accordingly, we find that plaintiffs have failed to establish that the machine was erroneously classified. Wayne Withrow, Tubular Structures Corp. of America v. United States, 62 Cust.Ct. 116, C.D. 3693, 295 F.Supp. 295 (1969), rehearing granted April 8, 1969.

We find, with respect to the Bursgreen 12″ Surface Planer and Joiner, Model B.F.T., the Wadkin Hydro-Electric (or Hydraulic) Crosscutting and Trenching Machine, Model C.J. 4, Left Hand, and the Wadkin 18″ Tilting Arbor Dimension Saw, Bench Model P.P., that the record establishes that the electric motors are readily detachable; that the substitution of power from electrical to other sources does not require substantial modification of the machines, *per se;* and that when operated by another source of power the machines will function normally for the purposes intended. Castelazo & Associates, Atwood Imports, Inc. et al. v. United States, *supra.*

Although defendant points out that use of a gasoline engine is not practicable, that the belting on the line shaft must be protected, and that some machinery might have to be powered from a remote source, these factors, as we have noted, are not controlling of the issues herein. United States v. Baker Perkins, Inc., R. F. Downing Co., Inc., *supra.*

As to the remaining machines, the record establishes, per the stipulation, that the motors are readily removable and that a source of motive power other than electrical may be substituted therefor. However, the record fails to show how these machines operate;[6] whether they possess other electrical features, and, if so, what changes are necessary to obviate their use. It may be that the machines contain electrical wiring or thermostatic controls which, as in Gallagher & Ascher Company v. United States, 53 Cust.Ct. 290, Abstract 68823 (1964), are not essential to their operation or, on the other hand, possess electrical elements such as the heating platens in the Schubert Press, Type MRL 100, herein, which would require substantial modification to replace or convert. It was plaintiffs' burden to establish that the machines do not possess any essential electrical features or devices. We are unable to make such determination from the sparse showing herein.

For the foregoing reasons, we sustain protests 65/19632, 65/19687, and 65/19633 insofar as they relate to the Bursgreen 12″ Surface Planer and Joiner, Model B.F.T., the Wadkin Hydro-Electric (or Hydraulic) Crosscutting and Trenching Machine, Model C.J. 4, Left Hand, and the Wadkin 18″ Tilting Arbor Dimension Saw, Bench Model P. P., which are dutiable, with their accompanying motors, as entireties under paragraph 372, as modified, *supra;* and dismiss protests 65/19687 and 65/19629 with respect to the Wadkin Double End Tenoning Machine W.O., and the Ehemann Ked XXIII/dh4 Automatic Surfacer Sander 16″. The protests herein are overruled as to all other merchandise.

Judgment will be entered accordingly.

6. There are no illustrations of the Hydraulic Press Type HH3.M, the single spindle slot morticer, or the single and twin spindle drilling units.