(C.D. 2681)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 16, 1966)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise at bar is referred to in general terms in the protests, enumerated in the schedule attached to and made part of this decision, and was particularized at the time of hearing and in the briefs of the parties as the items described on the invoices, with or without other words of description, as screens, screen plates, screen plate frames, and stock agitators. Said articles were classified by the collector of customs as stock-treating parts for pulp and paper machinery within the provisions of paragraph 356 of the

Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. They were, accordingly, assessed with duty at the rate of 17 per centum ad valorem.

Plaintiff contends that the items in question are machines or parts thereof for making paper or paper pulp in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and dutiable at the rate of 8½ per centum ad valorem.

The pertinent portions of the tariff act are as follows:

Paragraph 356 of the Tariff Act of 1930, as modified, *supra:*

Roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery (not including paper or pulp mill knives) _____ 17% ad val.

Paragraph 372 of said act, as modified, *supra:*

Machines, finished or unfinished, not specially provided for:

   \*      \*      \*      \*      \*      \*      \*

   \* \* \* machines for making paper or paper pulp; \* \* \*_____ 8½% ad val.

   \*      \*      \*      \*      \*      \*      \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

The following seven exhibits introduced on behalf of plaintiff were received in evidence:

Exhibit 1—A drawing of a Cowan screen.

Exhibit 2—A photograph of a Cowan screen without a screen plate.

Exhibits 3 and 4—Respectively, illustrations of a screen plate with frame and a stock agitator.

Illustrative exhibit 5—A small model of a stock agitator.

Illustrative exhibits 6 and 7—Respectively, an illustration of a tank with stock agitators and an illustration of the rotor of a Cowan screen.

It was stipulated by counsel for the respective parties that all of the articles in question are composed wholly or in chief value of metal.

Two witnesses testified on behalf of the plaintiff. The first was Sydney William Hooper, president of the company which manufactured and exported the merchandise in question. Hooper identified plaintiff's exhibits 1, 2, 3, 4, and 5.

The second witness for plaintiff was Karl Osler Elderkin, a mechanical engineer with 42 years' experience in the pulp and paper industry in engineering and management. He formerly was president of Bowaters Engineering and Development, Inc., a firm engaged in the designing and construction of paper mills. Since 1960, he has been a general consultant to the pulp and paper industry and is at present advising firms on the purchase and use of pulp and paper manufacturing machinery.

Elderkin gave extensive testimony regarding the processing of wood pulp or stock in general and the process of "screening" stock in particular. At the start of the processing, logs are reduced to wood chips. These chips are transformed into pulp by the actions of certain acids known as "liquor." After a certain storage period, the "liquor" is washed out and the remaining pulp or stock is squeezed between rollers and scraped off into a storage tank.

Thereafter, the stock goes through the screening process involving the merchandise in question. The stock, moving through a cylindrical screen plate, is thrown against that plate by the centrifugal force resulting from a spinning central shaft or rotor. The accepted particles of stock are forced through the perforations in the plate while the unaccepted coarse particles pass on to a "reject" outlet.

The result of this step is the separation of those stock fibers suitable for use in papermaking from those unsuitable by reason of coarseness, such as knots and splinters. The witness stated that the separation of particles is not considered to be "treatment" in the language of the trade, and the screens are not termed "stock treating parts" in the industry. The witness testified that stock treating machines are the "refiners, beaters, and so on [that] tear * * * [the] fiber, brush it, open it up, fibrilate it." The screen in question, he stated, merely selects the fibers. Raw stock is fed into the machine and screened stock is discharged.

After passing through the screen, the screened stock goes to a "thickener" where liquid is removed. It then enters the stock treatment plant where it is refined, abraded, "brushed," and fibrilated. Thence to the paper machine.

Elderkin also testified as to the use of the agitators in question. He stated that they are used to stir the stock and maintain its homogeneity while it is being kept in storage tanks. This may take place anywhere in the system after the transformation of wood to pulp. Although the agitator would tend to blend stock which lacked uniformity, this is not one of its functions. According to the witness, the agitator performs no function which answers to the description of "treatment" as understood in the industry.

We shall deal in turn with each of the four commodities encompassed by the instant protests, namely, the Cowan screen, the screen plate, the screen plate frame, and stock agitator.

The record reveals that the Cowan screen is one of the devices used in the process of making paper pulp. It is a self-contained unit connected to the larger pulp processing system only by the ingress and egress of the stock. Its principal component parts are the central rotor, the screen plate, and the screen plate frame. As we have seen, the spinning rotor forces the stock against the screen plate, which plate allows the passage of only the acceptable fibers. It is thus clear that in general terms the Cowan screen is a machine and in particular terms a machine "for making paper or paper pulp" within the provision of paragraph 372 of the Tariff Act of 1930, as modified. We derive support for this conclusion from the opinion of the Court of Customs and Patent Appeals in *Bird Machine Company* v. *United States*, 51 CCPA 42, C.A.D. 835. In that case, a Bird Jonsson screen, performing the same function as the Cowan screen in this case, was considered to be a machine "for making paper or paper pulp."

While a complete Bird Jonsson screen was not before the court, the reasoning of the appellate court with regard thereto is enlightening and persuasive. Said reasoning was the same as that used by the court in the early part of its opinion, in that case, in deciding that a Skardall stock preparator was a machine for "making paper or paper pulp" and not a "stock-treating" part. In arriving at its conclusion, the court found, first, that the legislative history of paragraph 372 of the tariff act indicated that various complete machines performing independent steps in the manufacture of paper pulp are classifiable within said provision, and that paragraph 372 included machines which refine pulp preliminary to its use in making paper. Second, the facts of the pulp and paper industry indicated that machines such as the Skardall stock preparator and the Bird Jonsson screen are independent machines engaged in the making of paper pulp or paper. And finally, to include the above-mentioned complete machines in paragraph 356 of the Tariff Act of 1930 as "stock-treating parts for pulp and paper machinery" would be inconsistent with the principle of *ejusdem generis* inasmuch as the items *eo nomine* provided for in said paragraph 356 are "parts" of machines.

The reasoning of the appellate court in the *Bird* case, *supra*, as applied to a Bird Jonsson screen, applies with equal force and effect to the Cowan screen presently in issue and, for the reasons above set forth, we conclude that the complete Cowan screen is encompassed by the provision for machines or parts thereof for making paper or paper pulp within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*.

The screen plate is the perforated metal plate through which acceptable and usable stock is forced by the spinning rotor. In the *Bird* case previously referred to, the appellate court decided that the screen plate of a Bird Jonsson screen was a "stock-treating" part in paragraph 356 of the Tariff Act of 1930, as modified, *supra*. Plaintiff in the instant case attempts to distinguish the *Bird* case on two grounds. First, it is contended that the testimony presented in the instant case has shed new light on the question of whether separation of stock is called "treatment" and thereby would lead this court to reach a conclusion different from that arrived at by the court of appeals. However, we do not consider this to be the case. In the *Bird* case, *supra*, testimony was received directed to showing that the action of the Bird Jonsson screen plates was not "treatment." In fact, portions of that testimony are quoted as footnote No. 6 to the appellate court's decision. Even in the light of said testimony, the court concluded that separation was "*treatment*." Of particular interest in this connection is the following statement of the appellate court in the *Bird* case, *supra*—

\* \* \* Thus "stock" apparently means the admixture of water, coarse pulp and impurities of all kinds when present. In handling "stock" we consider *separation* of parts thereof to be as much "treatment" of stock within the statutory meaning as is any direct mechanical or chemical action on the coarse pulp, which is but one part of the stock. We see no reason why the *pulp* constituent per se must be acted upon to have "*stock*" treatment (our emphasis). [Emphasis quoted.]

The second distinction urged by the plaintiff here is that the appellate court in the *Bird* case did not stop to consider whether the inclusion of a part which "separates" in a provision listing parts which perform the "functions of cutting, grinding, beating, or similar functions" was inconsistent with the principle of *ejusdem generis*. We find no such disparity between "separation" and the functions performed by the items provided *eo nomine* in paragraph 356 of the tariff act, as modified, as would make the inclusion of the instant screen plates incongruous. In all of the functions referred to there is a common element of forcible action resulting in a change of shape or composition.

In our opinion, the present proceeding has not resulted in a showing of new evidence or a new factual basis which might distinguish a departure from the holding in the *Bird* case, *supra*.

We are of the opinion that the only differences to be discerned between the screen plate in this case and the screen plate in the *Bird* case, *supra*, are that the former constitutes the "walls" of a "pipe" and strains stock forced against it by centrifugal force while the latter constitutes the bottom of a trough and strains stock forced through it by vibration. These differences are insufficient to bring about any

change in the conclusion that a screen plate is a stock-treating part in keeping with the holding of the Court of Customs and Patent Appeals that separation of pulp fibers is "stock treatment."

For the above reasons, we hold that the screen plates here in issue are "stock-treating parts for pulp and paper machinery" in paragraph 356 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*.

The screen plate frames are the metal trusses by which the screen plates are fastened and held in place around the central rotor. The record before us discloses that said screen plate frames do not treat stock in any manner. Inasmuch as they are parts of Cowan screens, they, therefore, are subject to classification as parts not specially provided for of machines for making paper or paper pulp, in paragraph 372 of said act, as modified.

The stock agitator is 'a stirring device, resembling a hollow airplane propellor, which is used in storage tanks to maintain the homogeneity of the stock. The testimonial record, summarized above, discloses that the function of the agitator is to *maintain* homogeneity and *not* to *induce* it. We are, therefore, of the opinion that the "stirring" performed by the agitator is not "stock-treatment" in the tariff sense. The least that can be expected of a process to qualify it as "treatment" is some action upon stock which changes its form or composition. Here the stock undergoes no change by virtue of the agitation.

We are of the opinion that said stock agitators 'are properly classifiable as parts, not specially provided for, of machines for making paper or paper pulp, in paragraph 372 of the Tariff Act of 1930, as modified, *supra*.

Based upon the foregoing considerations we hold as follows—

1. The screen plates for Cowan screens covered by entry F–2126 accompanying protest 64/3384 constitute stock-treating parts for pulp and paper machines and are properly classifiable within the *eo nomine* provision therefor in paragraph 356 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*. To that extent the decision of the collector of customs is affirmed and the claim in the protest, *contra*, is overruled.

2. The claims of plaintiff that the complete Cowan screens covered by entry A–8479 accompanying protest 63/22278 and entry F–1626 acompanying protest 64/3384, and the stock agitator covered by entry A–1875 accompanying protest 63/22279, should properly have been classified as machines or parts thereof for making paper or paper pulp in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and assessed with duty at the rate of 8½ per centum ad valorem, are sustained.

3. As to the screen plate frames with screen plates covered by entry A–8479 and further referred to in entry A–1151 accompanying

protest 63/22278, since the appraisement thereof was predicated on the basis that the screen plate frames together with the screen plates constituted entireties, no separate value for each of said items has been returned by the appraiser. Accordingly, the appraisement of said merchandise was invalid and void, and the liquidation of said entries was premature and a nullity in view of the absence of a legal appraisement. It follows that protest 63/22278 insofar as it relates to the type 316 screen plate frames with screen plates was likewise premature. We, therefore, dismiss said protest insofar as it relates to the screen plate frames with screen plates covered by entries A–8479 and A–1151 in accordance with the provisions of title 28, U.S.C., section 2636(d), and remand the matter to a single judge to determine the proper dutiable value of said merchandise in the manner prescribed by law.

Judgment will be entered accordingly.