(C.D. 3237)

CASTELAZO & ASSOCIATES
ATWOOD IMPORTS, INC. } v. UNITED STATES

United States Customs Court, Second Division

(Decided December 27, 1967)

Glad & Tuttle (Robert G. White of counsel) for the plaintiffs.

Edwin L. Weisl, Jr., Assistant Attorney General (Harold L. Grossman, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The cases listed in schedule "A", annexed hereto and made a part hereof, consolidated for the purpose of trial, involve the classification of a number of different types of woodworking machines. Said machines were imported with electric motors and were classified as entireties as articles having as an essential feature an electrical

element or device under the provisions of paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and assessed with duty at the rate of 13¾ per centum ad valorem or at 12½ per centum ad valorem by virtue of the Presidential proclamation contained in 97 Treas. Dec. 157, T.D. 55615, and T.D. 55649, depending upon date of entry or withdrawal from warehouse.

Plaintiffs herein by their protests and amendments thereto contend said woodworking machines are not in a tariff sense articles having as an essential feature an electrical element or device as provided for in paragraph 353, *supra*. It is their position that the classification of the machines and motors as entireties by the collector of customs at Los Angeles, California, was erroneous and said motors are properly dutiable at the rate of 10½ per centum ad valorem under the *eo nomine* provision for motors contained in paragraph 353, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, while the woodworking machines, less the value of the motors, are subject to duty at the rate of 11½ per centum ad valorem or 10½ per centum ad valorem under the provisions of paragraph 372 of said act, as modified by the sixth protocol, *supra*, or T.D. 55615 and T.D. 55649, depending upon the date of entry or withdrawal from the warehouse for consumption.

The pertinent portions of the statutes involved herein are as follows:

Paragraph 353, Tariff Act of 1930, as modified by T.D. 52739 or T.D. 55615 and T.D. 55649:

Articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

  *   *   *   *   *   *   *

Other ( * * * ) _____ 13¾% ad val. or 12½% ad val.

Paragraph 372, Tariff Act of 1930, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

  *   *   *   *   *   *   *

Other (except * * *) _____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

Paragraph 372, Tariff Act of 1930, as modified by T.D. 55615, made effective by T.D. 55649:

Machines, finished or unfinished, not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Sawmill and other wood-working machines (except reciprocating gang-saw machines) _____ 10½% ad val.

Other (except * * *; sawmill and other woodworking machines; * * * ) _____ 10½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 of this Schedule:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other (except * * *) _____ The rate for the article of which they are parts

Paragraph 353, Tariff Act of 1930, as modified by T.D. 54108:

Articles having as an essential feature an electrical element or device, * * *:

Motors:
Of more than $\frac{1}{10}$ horsepower but less than 200 horsepower_____ 10½% ad val.

The record herein consists of the testimony of Mr. Milton E. Gray, the majority stockholder of Atwood Imports, Inc., the actual importer herein, and 3 exhibits. Mr. Gray, a mechanical engineer, with 35 years' experience in designing, selling, and servicing technical equipment and machinery, stated that he was familiar with the imported articles having first seen them in European trade fairs and subsequently purchasing them.

Since there are numerous machines involved and in order to give due and proper consideration to each, testimony was adduced by plaintiffs separately as to each machine. Before going into the specific testimony about each machine, we note plaintiffs have abandoned their claim as to the item designated "Wadkin Universal Tool and Cutter Grinder, Model N.H. with 24″ capacity" in entry 8670 which is covered by protest 63/17231. The protest as to that item is, therefore, dismissed.

According to the record, as made herein, all the 11 types of machines involved were imported with one or more electric motors and in one instance with an electrically heated platen in addition to the motor. For the sake of clarity, we have placed the type or manner

of power transmission of said machines into the following four categories:

1.  Power transmitted by shaft:

    (a)  Multiple Ripsaw, Type H–351 (entry 53039 in protest 63/17070, and entry 48453 in protest 63/18806).

    (b)  Schubert Single Daylight Hydraulic Press, Type MRE 250 (entry 47906 in protest 63/17070).

    (c)  Wadkin Hydro-Electric Crosscutting and Trenching Machine, Model C.J. 4 (entry 46705 in protest 63/17070).

    (d)  Wadkin Hydraulic Crosscutting and Trenching Machine, Model C.W. 1 (entry 66819 in protest 63/18808).

    (e)  Rye Type R. 72, Automatic Shaping Machine No. 347 (entry 43678 in protest 63/17070).

2.  Power transmitted by belt and pulley:

    (a)  Rye Type DR–1, Drawer Routing Machine No. 110 (entry 46585 in protest 63/17070).

    (b)  Wadkin Bursgreen 14 inch Tilting Arbor Fixed Table Dimension Saw, Model A.G.S. (entry 8670 in protest 63/17231).

    (c)  Wilmsmeyer Edge Belt Sander Type, Model KKS II (entry 8418 in protest 63/23184).

3.  Drive by motor and gear:

    (a)  Veneer Jointing Guillotine, Type H–441 (entry 55221 in protest 63/17070).

4.  Drive by direct motor:

    (a)  Rye Type PD–3, Drilling Unit (entry 46585 in protest 63/17070).

    (b)  Wadkin Vertical Spindle Moulder and Shaper, Model E.Q. (entry 8670 in protest 63/17231).

The record clearly and positively establishes that all the foregoing machines may utilize any type of motive power interchangeably by means of a rather simple procedure. Those in category 1 for the most part would permit the removal of the motor by removing usually four bolts and placing a pulley on the shaft or in some instances replacing the shaft with a stock rod and attaching a pulley and belt arrangement which would be connected to a central source of power other than electricity.

The machines in category 2 would permit the removal of the motor, usually by the removal of four bolts, and attaching the proper size belt and pulley arrangement to a central form of power other than electricity.

The machine in category 3 could likewise be modified by the removal of the motor and in addition a gear and have both replaced by the belt and pulley arrangement.

The machines in category 4 will be discussed *infra*.

The uncontroverted evidence of record establishes that all the changes are relatively simple and require the expenditure of little time and money. The power source other than electricity could be water wheel, steam power, gasoline or oil diesel engines. The witness further testified that "in nearly all cases" the motors used are conventional off-the-shelf electric motors rather than those specially designed for a machine. Two exceptions he noted were where the machine utilizing power other than electricity would require "ball bearing spindles," such machines being the Rye Type PD–3 Drilling Unit and the Wadkin Hydro-Electric Crosscutting and Trenching Machine, Model C.J. 4. In addition thereto, it appears from the record that the motors for the Wadkin Vertical Spindle Moulder and Shaper, Model E.Q., were specially wound to the proper speed for direct coupling.

There have been numerous cases involving the question of the propriety of classification under the provisions of paragraph 353, *supra*, of various types of machines imported with electric motors. In a number of cases where it had been established that the electric motors were not essential under the principles enunciated in *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, and *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714, and proof was adduced that the motors were of the general purpose type, the court found the appraisement of machine and motor as an entirety to be erroneous and remanded the cases for separate valuation thereof. See *Supreme Woodworking Machine et al.* v. *United States*, 54 Cust. Ct. 368, Abstract 69204, and *Arnhold Ceramics, Inc.* v. *United States*, 56 Cust. Ct. 416, C.D. 2668. In each instance, the court found the machines involved did not have as an essential feature an electric element or device and in the *Arnhold* case, *supra*, the court specifically held the general purpose motors fell within the *eo nomine* provision for motors contained in paragraph 353, *supra*.

The merchandise described as (1) Rye Type PD–3 Drilling Unit, (2) Wadkin Hydro-Electric Crosscutting and Trenching Machine, C.J. 4, and (3) Wadkin Vertical Spindle Moulder and Shaper, E.Q., does, however, contain motors which are specifically designed for use with the involved machines. However, the interchangeability with other sources of power may readily be accomplished and, therefore, the machines do not have as an essential feature an electric element or device. *United States* v. *Dryden Rubber Co., supra.* The electric motors while *not* essential for tariff classification under paragraph 353, *supra*, are, nevertheless, parts of said machines under the principles

enunciated in *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849.

We are of the opinion that the above three machines (type PD–3, model C.J. 4, and model E.Q.) together with their motors, are properly subject to duty at the rate of 11½ per centum ad valorem or 10½ per centum ad valorem under the provisions of paragraph 372, as modified, *supra*, depending upon date of entry.

With respect to the machine designated as the Schubert Single Daylight Hydraulic Press, Type MRE 250, the evidence establishes that the removal of the motor and the substitution of other power might be readily accomplished without any substantial modification to the machine, *per se*, and that said machine would function normally for the purpose for which it was intended. The record also establishes the motor to be a general purpose motor. However, it appears that the involved machine, in its condition as imported, contained an electrically heated platen which is used for hot rolling. From the evidence adduced on cross-examination, it would appear that, in order for the machine to operate on a hot rolling basis, a heated platen is essential. In order to modify the electric heater and utilize steam, the platen would require a source to generate steam, plumbing lines and fuel lines which could result in an expenditure of $550. The actual mechanics of such conversion are not graphically depicted in the record. It may well be that the expenditure of this sum and the utilization of labor expended on the plumbing and fuel lines would not constitute a modification of the machine, *per se*, but merely a modification apart from the machine. However, the record having failed to establish this, we are constrained to overrule the protest and sustain the classification of the collector.

As to the balance of the items, we are of the opinion that the substitution of power from electrical to other sources may be accomplished without substantial modification to the machines, *per se*, and that the machines would function normally for the respective purposes intended. The record also establishes that the electric motors imported with said machines are of the general purpose type. Accordingly, such machines are not those that fall within the purview of paragraph 353, *supra. Baker Perkins, supra; Dryden Rubber, supra.* The motors being of a general purpose type and not being essential to the operation of said machines, should have been appraised as separate entities.

Since the appraisement of the contested articles was predicated on the basis that the machines and the motors constituted entireties, no separate value for each of said items was found by the appraiser. Therefore, the appraisements herein with respect to the remaining seven types of machines are invalid and void and the liquidation of the entries premature and a nullity by virtue of the absence of legal appraisement. The protests are, therefore, dismissed in accordance with

the provisions of 28 U.S.C., section 2636 (d), and the matter remanded to a single judge to determine the proper dutiable value of the machines and the electric motors in the manner prescribed by law.

Judgment will be entered accordingly.