**CASTELAZO & ASSOCIATES and Atwood Imports, Inc., et al.**

v.

**UNITED STATES.**

**C.D. 3707;  Protest Nos. 66/62282–80209.**

United States Customs Court,
Second Division.

Feb. 17, 1969.

Protest 65/19671 involves one Motor Driven HEMAG Rotor Shaper, Type 150, exported from West Germany and entered on April 11, 1963.

Protest 66/62325 involves one Motor Driven "Rye" Type J/2 Multi-head Slot Morticing Machine No. 177, and one Motor Driven Brookman 25 Spindle Fully Automatic Dovetailing Machine No. 5434, both exported from England and entered on November 13, 1962.

Protest 66/62286 involves one Motor Driven Fully Automatic Belt Sanding Machine, Butfering Model VS 59c, exported from West Germany and entered on May 24, 1963.

Each woodworking machine contains one or more electric driven motors. Each machine was classified as an *entirety*. Duty was assessed under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649, as an article having an electrical element or device as an essential feature, at 12½ per centum ad valorem or 11½ per centum ad valorem depending on the date of entry.

The defendant contends that if said woodworking machines are not entireties, then the liquidations and appraisements are void, and that plaintiffs' amended claims are premature.

The plaintiffs contend that the machines, *per se*, are classifiable under paragraph 372 of said modified act as woodworking machines, dutiable at 10½ per centum ad valorem, or 10 per centum ad valorem, depending on the date of entry; that the electric motors are general purpose motors that can be used for purposes other than with woodworking machines; that the amendments to the protests, which were allowed (R. 5) claim paragraph 353 of said act, as modified by T.D. 54108 and T.D. 55805, as electric motors of more than 1/10 horsepower but less than 200 horsepower, dutiable at 10½ per centum ad valorem or other

Glad & Tuttle, Los Angeles (Robert Glenn White, Los Angeles, of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff, and Velta A. Melnbrencis, New York City, trial attorneys), for defendant.

Before RAO, Chief Judge and FORD and WILSON, Judges.

WILSON, Judge:

Six protests were consolidated for trial. They involve various types of woodworking machines as herewith shown.

Protest 66/62282 involves one Motor Driven Planer and Moulder, Type NL/T, exported from England and entered on August 2, 1963.

Protest 65/19587 involves one Motor Driven White Multiple Rip Sawing Machine and Straight Line Edger, Type AU/A, exported from Scotland and entered on February 13, 1963.

Protest 65/19630 involves three Motor Driven Automatic Hydraulic Double Head Template Shapers, Type "WIGO 1075", exported from West Germany and entered on June 7, 1963.

rates depending on dates of entry; that the appraisements are null and void, and it is necessary to remand all cases to a single judge to find separate values for the two mentioned articles.

The statutes involved are as follows:

Paragraph 353, Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649:

Articles having as an essential feature an electrical element or device, such as electric motors * * * all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

* * * * * * * *

Other (except * * *) ...........12½% ad val.11½% ad val.
[July 1, 1962] [July 1, 1963]

Paragraph 353, as modified by T.D. 55805:

Articles having as an essential feature an electrical element or device, such as electric motors * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Motors of more than 1/10 horsepower but less than 200 horsepower .................9½% ad val.8½% ad val.
[Jan. 1, 1963] [Jan. 1, 1964]

Paragraph 353, as modified by T.D. 54108:

Articles having as an essential feature an electrical element or device, such as electric motors * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

* * * * * * * *

Motors:

Of more than 1/10 horsepower but less than 200 horsepower .............10½% ad val.
[June 30, 1958]

Paragraph 372, as modified by T.D. 55615 and T.D. 55649:
Machines, finished or unfinished, not specially provided for:

* * * * * * * *

Sawmill and other wood-working machines (except reciprocating gang-saw machines) .................10½% ad val.10% ad val.
[July 1, 1962] [July 1, 1963]

———◆———

28 U. S. Code, section 2636(d):

If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by

this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

The only witness to testify was Milton E. Gray, president and managing director of Atwood Imports, Inc., the ultimate consignee of the merchandise in issue. He was involved in purchases and sales and had a "long background of machine designing leading into ownership of the company, which purchased and sold machines." He has a B.S. degree in physics, and is an all-science minor. He studied mechanical engineering at the University of California, Los Angeles, for 2 years. He has been self-employed throughout his working life until 1967, always in technical and mechanical lines. He is familiar with the imported merchandise and visited the factory and selected it in every case as an item he chose to sell in the United States. He purchased the imported merchandise and signed each of the orders.

He testified that the illustration of the machine received in evidence as plaintiffs' exhibit 1, is from a brochure describing the planer moulder in protest 66/62282, and describes two modifications thereto. The exhibit accurately describes the imported NL/T machine which is imported with six electric motors bolted to the machine. Five of the motors transmit motive power to the machine by belt and one by gear. The motors can be removed and other sources of motive power can be employed by unbolting the motors, exposing the shafts of the cutterhead, and putting on suitable drive pulleys by sliding them on the shaft, and either be keyed or set with a set-screw. The motor which transmitted power by a gear was inside the machine and he could only indicate an arrow on exhibit 1 where it was located. To remove that motor he would have to drill a hole in the side of the casting to get it to the outside and to attach an external source of power. The process would take about 2 days and the labor would cost about $130. If other power were used the machine would function in the same way, unimpaired, and would not require modification to the woodworking machine itself. Other power could be by "line shaft" usually suspended from ceiling beams, and pulleys thereon, taking power down to various machines stationed under it by belts; (other sources would be gas driven (R. 24)). The belt driven motors are mounted by four bolts to the main bed of the machine. The machine contains a starting block which has the electrical controls and each motor has an overload voltage protection device which breaks the circuit to where the motor usually stops or turns off. Also, when the voltage drops below normal the motor loses power, and a little heater for it warms up and throws out the circuit, stopping the motor. If other sources of electrical power were used, the overload devices would not be necessary. The motors when removed could be used for other purposes without modification.

The testimony of Mr. Gray, with minor variations, was substantially the same as to all of the machines in all of the protests under consideration, with change costs from about $50 to about $200. He testified (R. 45):

Q. Now, Mr. Gray, referring to all these machines you have testified to this morning, have you ever seen any of them changed over to uses of other sources of motive power here in the United States? —A. No, I never have.

Q. And are they all woodworking machines?—A. Yes, they are all woodworking machines.

and under cross-examination he testified (R. 56–57):

Q. With reference to these woodworking machines in general, if you order a machine, do you specify the motor separately if you intend to order a motor from them?—A. Yes, we do, for this reason: In the United States there are four variations of motors, single phase and 3 phase, 100 and 220 volt single phase, and 240 and 480 volt three phase.

Q. So that I take it when you refer just to machines, you are talking about a machine without a motor?—A.

When we place the purchase order we place the purchase order for a machine and hypothecate as to what motors are most likely to be purchased with the machine and order them. We have been wrong. In the case of the Brookman 25 Spindle Dovetailer, we brought one in with one type of motor, but were forced to replace it with an American made motor because the customer did not have the power that we had brought it in for, and therefore I had to make a conversion at that time using an American purchased motor.

Q. So because of this, I do understand that while they may be on the same order, you do order machine and motor separately?—A. Yes, I think that would be a fair way to put it. We order the entire unit, including motors, but the order is written up, a machine and the following motors of the following horsepower and rating.

Plaintiffs' contention is that the woodworking machines *per se*, and the motors *per se*, are separately subject to assessment of duty. The defendant contends that if the imported machines are not entireties, then the liquidations and appraisements are void and plaintiffs' amended claims are premature. The defendant does not dispute plaintiffs' contention that if the importations are not entireties, then the cases should be remanded to a single judge to find separate values for the imported woodworking machines and separate values for the electrical motors which accompanied the machines.

Plaintiffs cite in their brief the case of United States v. Dryden Rubber Co., 22 CCPA 51, 54, T.D. 47050, wherein the court stated that "the electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended." In the cases at bar, the record discloses that the woodworking machines would function normally for the purposes intended without the electrical motors, if other sources of power such as by belt or gear were adopted.

In Ralph C. Coxhead Corp. v. United States, 22 CCPA 96, 102, T.D. 47080, also cited in plaintiffs' brief, the court stated that an electric motor would not be an essential feature of a machine if the latter were so constructed that it might, *without substantial modification*, be operated by other than electric power. In the case at bar the record discloses that all of the electric motors on all of the imported woodworking machines are removable without difficulty, whether driven by belt or by gear, by loosening the bolts from their mountings. In such event, other sources of motive power, such as line shafts or gas could be applied by placement of a pulley and belt on an existing shaft or by extending a shaft or jack shaft outward to a point where a belt and pulley could be used. When so adapted all of the woodworking machines would continue to function as intended without loss of efficiency or at great expense. The defendant offered no evidence that the modifications referred to, *supra,* are substantial or costly. The plaintiffs' burden was therefore met by evidentiary facts that the conversion would not require substantial modification or reconstruction, or great expense and that the imported machines remained reasonably suitable to perform the normal intended function with reasonable efficiency. Berkley Machine Company v. United States, 55 Cust.Ct. 444, Abstract 69577.

In the case of Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A.D. 894, cited in defendant's brief in quoting from Chadwick-Miller Importers, Inc., et al. v. United States, 59 Cust.Ct. 529, C.D. 3221, the merchandise consisted of so-called "cabana sets" which were described as "two-piece shirt-short sets." They were held to be entireties because the record showed they were designed as a unit and matched as to color, print, as well as fabric; that they were imported as a unit, pinned together; invoiced as a unit and sold as a unit at wholesale and at retail. The record disclosed that when the two parts were separated and

either part returned for credit, such part was either given to charity or placed in a waste basket. The court held that the separate articles had no commercial value except when joined as a unit and that the possibility that a wearer may use either article separately or with another article of wearing apparel was not controlling as to proper classification of the cabana sets as imported. The foregoing facts are in no way similar to the facts in the cases involving the imported woodworking machines. Hence, the machines should *not* be held to be entireties.

In the case of United States v. Altray Company, 54 CCPA 107, C.A.D. 919, also cited in defendant's brief as stated, *supra,* the merchandise consisted of miniature artificial Christmas trees about 2 inches in height which were affixed adhesively at the base thereof to a foil-wrapped wafer. Although they were imported and sold affixed *together,* the court held these articles were *not* entireties. The court stated, page 110, that, "where the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the very manner for which they are otherwise used and when articles very similar to those constituents are on sale as separate items, *the combination is not, in the sense of customs law, an entirety.*" [Emphasis supplied.] In the cases before the court, the record discloses the easy manner of disassembling the motors from the various woodworking machines; that the motors could be utilized for other purposes; and that the identical articles in the cases at bar are sold as *separate items,* though appearing on the same order. Hence, the combination of the woodworking machines and the motors are *not* entireties in the tariff sense.

Other cases cited by respective counsel are not deemed necessary for discussion herein although they have been considered by the court.

The following cases were not cited by either counsel:

In the case of Henry A. Wess, Inc. v. United States, 43 Cust.Ct. 78, C.D. 2107, the same paragraphs 353 and 372 were under consideration with reference to woodworking machines which were accompanied by an electric motor upon importation. They were classified as entireties in paragraph 353 as in the cases at bar within the provision for articles having as an essential feature an electrical element or device. The court in the *Wess* case, *supra,* stated (page 82):

The testimony of plaintiff's witness, Covert, in this case, a man experienced in the construction, use, and functioning of the woodworking machinery in issue, standing uncontradicted, discloses that the machines before the court may be powered by means other than by electricity, such as diesel, steam, gasoline, and so forth, by the simple expedient of removing the belt running from the motors to the driving pulleys on the machines, unscrewing the four bolts which attach the motors to each machine, and affixing a belt from any other power source to the driving pulley of the machines, the proper speed ratio of the several machines being maintained by the installation of an appropriate pulley on the power unit.

On the record there made, the court held that the there involved woodworking machines together with their accompanying motors were not classifiable as articles having as an essential feature an electrical element or device within the purview of paragraph 353 as determined by the collector of customs, but that said articles should properly have been classified separately; that as the appraisement was based on the premise that each machine together with its motor constituted an entirety, no separate value for each of said items was returned by the appraiser. Accordingly, the appraisements were held to be invalid and void; the liquidation was held to be premature and a nullity in view of the absence of a legal appraisement; and the protest was likewise premature.

The protest was dismissed in accordance with the provisions of Title 28, U.S. Code section 2636(d). The case was remanded to a single judge to determine the proper dutiable value of the merchandise in the manner prescribed by law.

In United Merchandising Corp. et al. v. United States, 48 Cust.Ct. 50, C.D. 2313, 500 certain dry cell 45-volt batteries were claimed by plaintiff to be properly dutiable either as parts of radios with which they were imported under paragraph 353, Tariff Act of 1930, as modified by T.D. 52739, or as entireties under said paragraph. The classification of the radios was not contested. A witness for plaintiff testified that the said batteries were used exclusively for the imported radios, but conceded that they could be used by any radio requiring the same voltage and adaptable to the same size battery. He found no other use for the battery. After citing and quoting from several cases, the court in the *United Merchandising Corp.* case, *supra,* held page 54, "that the imported batteries are not parts of, nor entireties with, the radios covered by the same entry * * *." The batteries are *eo nomine* provided for under paragraph 353, as modified, *supra,* as are the motors herein involved provided for under paragraph 353, as modified by T.D. 54108 and T.D. 55805, *supra.*

In James G. Wiley, a/c Pasadena Firearms Co. v. United States, 56 Cust.Ct. 331, C.D. 2645, certain barrels and frames for 22 caliber rimfire pistols were exported from West Germany aboard separate airplanes on July 4, 1957, and arrived at the port of Los Angeles on the same day. Entry was made separately but consecutively on July 10, 1957, for the account of the same ultimate consignee. Thereafter they were appraised and classified as entireties. The court held that arrivals of different aircraft constitute, both physically and commercially, separate importations, the separate entries of which may not be merged for purposes of appraisement and classification. The court held, pages 337–338:

* * * Moreover, the classification and liquidation depended upon a total value figure of the constructive attachment of barrel to frame. Under these circumstances, the absence of a validly conducted legal appraisement renders the liquidation of the entries premature nullities. Supreme Woodworking Machine et al. v. United States, 54 Cust.Ct. 368, Abstract 69204. The protest in this action is likewise premature and dismissed (28 U.S.C., section 2636(d)), and the case is remanded to a single judge to determine the proper dutiable values in each entry, as provided by law.

In A. N. Deringer, Inc. v. United States, 56 Cust.Ct. 477, C.D. 2681, appraisement of screen plate frames with screen plates was predicated upon the basis that the screen plate frames together with the screen plates constituted entireties, and no separate value for each of said items was returned by the appraiser. The court held that the appraisement of said merchandise was invalid and void, and that the liquidation of said entries was premature and a nullity in view of the absence of a legal appraisement. The protest was dismissed as to such merchandise in accordance with the provisions of Title 28 U.S. Code section 2636(d), and remanded to a single judge to determine the proper dutiable value of said merchandise in the manner prescribed by law.

In Torch Mfg. Co., Inc. v. United States, 57 Cust.Ct. 521, C.D. 2863, the merchandise consisted of five-cell flashlights and batteries. They were invoiced and entered separately but were imported together. The collector of customs classified them as entireties. The plaintiff claimed the batteries were dutiable separately from the flashlights. No separate values for the batteries and flashlights were returned by the appraiser. The court held, page 526:

* * * Accordingly, the appraisements herein were invalid and void,

and the liquidation of the entries was premature and a nullity, in view of the absence of a legal appraisement. It follows that the protests filed herein were likewise premature. We, therefore, dismiss the protests in accordance with the provisions of 28 U.S.C., section 2636(d), and remand the matters to a single judge to determine the proper dutiable values of the flashlights and batteries in the manner prescribed by law.

A result similar to the foregoing was held in Castelazo & Associates, Atwood Imports, Inc. v. United States, 59 Cust. Ct. 586, C.D. 3237, wherein a certain number of different types of woodworking machines were imported. Those machines were imported, as in the case at bar, with electric motors and were classified as entireties as articles having as an essential feature an electrical element or device under the provisions of paragraph 353, as modified by T.D. 52739, with duty assessed depending upon the date of entry or withdrawal from warehouse. The court held, page 591:

As to the balance of the items, we are of the opinion that the substitution of power from electrical to other sources may be accomplished without substantial modification to the machines, *per se,* and that the machines would function normally, for the respective purposes intended. The record also establishes that the electric motors imported with said machines are of the general purpose type. Accordingly, such machines are not those that fall within the purview of paragraph 353, *supra.* *Baker Perkins, supra; Dryden Rubber, supra.* [United States v. Baker Perkins, Inc., R. F. Downing Co., Inc., 46 CCPA 128, C.A.D. 714; United States v. Dryden Rubber Co., 22 CCPA 51, T.D. 47050.] The motors being of a general purpose type and not being essential to the operation of said machines, should have been appraised as separate entities.

Upon the record as made in the protests in issue, and upon the cases referred to in this opinion, the court is of the view that the appraisements herein were made on the basis that each of the woodworking machines constituted an entirety with the electric motors accompanying them; that no separate value was indicated by the appraiser for each of such separate articles; that said appraisements were null and void; that the liquidations of the entries were premature and a nullity by virtue of the absence of legal appraisements, and that the amendments of the protests were premature. The protests are, therefore, dismissed in accordance with the provisions of 28 U.S. Code section 2636(d), and the matter is remanded to a single judge to determine the proper dutiable value of the woodworking machines and electric motors in the manner prescribed by law.

Judgment will be entered accordingly.