(C.D. 3989)

BALDT ANCHOR, CHAIN & FORGE
    DIVISION OF THE BOSTON METALS CO. } v. UNITED STATES
ALBERT F. MAURER COMPANY

United States Customs Court, Second Division

(Decided April 3, 1970)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert Richardson* and *John A. Winters*, trial attorneys), for the defendant.

Before RAO, FORD, and MALETZ, Judges

MALETZ, Judge: This case involves two protests against the tariff classification of certain machinery used in the process of making heavy anchor steel chains for vessels. The machinery was imported from Sweden through the port of Philadelphia in two separate shipments. The first shipment, which was entered in April 1958, contained a

heavy-duty transport system which conveyed the partially manufactured chains from one manufacturing station to the next. The second shipment, which was entered in May 1958, consisted of five machines to be used in the production of the chains. This latter shipment was comprised of (1) an electrical resistance heater, (2) a hydraulic bending machine, (3) an automatic flash welding machine, (4) a clamping device, and (5) a hydraulically operated stud press.

The government classified the merchandise involved in the first shipment, i.e., the heavy-duty transport system, as other articles having as an essential feature an electrical device or element, not specially provided for, under paragraph 353 of the Tariff Act of 1930, as modified, T.D. 52739, and assessed duty at the rate of 13¾ percent ad valorem. Plaintiffs protested (protest 62/8017), claiming that the "merchandise is properly dutiable at 11% under Par. 353."

The merchandise covered by the second shipment was classified by the government as follows:

| Article | Tariff Provision | Duty |
|---|---|---|
| 1. Electrical resistance heater | Par. 353, as modified, T.D. 52739 (electric heater) | 12½% |
| 2. Hydraulic bending machine | Par. 372, as modified, T.D. 51802 (machine tools) | 15% |
| 3. Automatic flash welding machine | Par. 353, as modified, T.D. 54108 (electric welding apparatus) | 11% |
| 4. Clamping device | Par. 372, as modified, T.D. 54108 (machine nspf) | 12% |
| 5. Hydraulically operated stud press | Par. 372, as modified, T.D. 51802 (machine tools) | 15% |

Plaintiffs protested (protest 62/10442) these classifications claiming that "the articles should be classified as an entirety with duty at 11% under Par. 353 (welding apparatus, instruments and devices)."

Quoted below are the pertinent provisions of the Tariff Act of 1930:

Classified under:

Paragraph 353, as modified, T.D. 52739:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Electric * * * heaters, and ovens_____ 12½% ad val.

\*      \*      \*      \*      \*      \*      \*

Other * * *_____ 13¾% ad val.

Paragraph 353, as modified, T.D. 54108:

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 11% ad val.

Paragraph 372, as modified, T.D. 51802:

Machines tools (except jig-boring machine tools) _____ 15% ad val.

Paragraph 372, as modified, T.D. 54108:

Machines, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other * * *_____ 12% ad val.

Claimed under:

Paragraph 353, as modified, T.D. 54108:

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 11% ad val.

\*      \*      \*      \*      \*      \*      \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 in this Part:

\*      \*      \*      \*      \*      \*      \*

Other _____The same rate of duty as the articles of which they are parts.

By way of introduction, it is to be noted that at the trial plaintiffs contended that the two shipments constituted an entirety consisting of the integral parts of a single electrical welding apparatus used to manufacture heavy anchor chains. However, in their brief, plaintiffs recognized that the articles under protest were not all imported in the same shipment and that their classification as an entirety was therefore precluded. See e.g., *University of Chicago* v. *United States*, 2 Cust. Ct. 358, C.D. 159 (1939); *James G. Wiley* v. *United States*, 56

Cust. Ct. 331, C.D. 2645 (1966). For this reason, plaintiffs now argue that all the imported merchandise is properly classifiable as *parts* of welding apparatus under paragraph 353, dutiable at 11 percent ad valorem. Defendant, on the other hand, insists that this claim for classification under the parts provision of paragraph 353 is barred on the basis that the protests—which were not amended—are allegedly limited to a claim as an entirety—viz., electrical welding apparatus.

It is, of course, basic that plaintiffs are bound by the specific claims in their protests and that such claims must direct the mind of the collector to the appropriate provision of law under which the claims are made. *Davis* v. *Arthur*, 96 U.S. 148, 151 (1877); *Bliven* v. *United States*, 1 Ct. Cust. Appls. 205, 208, T.D. 31239 (1911); *Mary G. Hutchinson* v. *United States*, 10 Cust. Ct. 48, 49, C.D. 720 (1943); *United States* v. *Troy Laundry Machine Co.*, 27 Treas. Dec. 550, 551, T.D. 34947 (1914). In this context, it is clear that the protest covering the second shipment (protest 62/10442) claiming that "the articles should be classified as an entirety" is insufficient to sustain a claim under the parts provision of paragraph 353. Accordingly, plaintiffs are limited in that protest to a claim that the five imported machines involved in the second shipment are dutiable as electrical welding apparatus as an entirety.[1]

We consider now the first protest (protest 62/8017) which reads "[s]aid merchandise is properly dutiable at 11% under Par. 353." It may be noted, in addition, that the merchandise was characterized in the protest itself as "welding equipment and similar merchandise * * * dutiable at 11% under Par. 353." Coupled with that, the consumption entry and the invoice description made it manifest that the equipment was to be used in conjunction with or as part of electrical welding apparatus. In these circumstances, the protest is sufficient inasmuch as it, in context with the entry papers, directed the mind of the collector to the parts provision of paragraph 353, as modified, under which the claim is now asserted.

There is no real dispute as to the facts. They are as follows: All the items under protest were designed to be used and operated together to produce a welded anchor chain by a continuous process; the chain could not be produced in this manner if any of the steps performed by these items were eliminated. The imported items were integrated or coordinated so as to operate together as a unit, and

---

[1] In *Wilshire Industries, Inc.* v. *United States*, 64 Cust. Ct. 84, C.D. 3963 (1970), the claimant sought to amend a protest at trial to claim various components were classifiable as an entirety. Since some of the components were not subject to protest initially, the court rejected the entireties' amendment on the basis that to grant such amendment would in effect enlarge the scope of the protest to encompass all the components. A similar problem is not presented here in view of the fact that the protest read as a whole was directed to all the electrical welding components.

each item was designed for a particular application in the production of a welded anchor chain. The individual items did not have any use except in conjunction with the other imported items to produce welded anchor chains.

The actual manufacturing process is a continuous one by virtue of the transport equipment covered by the first shipment. This equipment consists of a specially constructed revolving turntable with four overhead crane stations, which conveys the material mechanically from one machine station to the other. The five imported machines covered by the second shipment perform the following functions: (1) the electrical resistance heater heats a steel bar to approximately 1,500 degrees Fahrenheit; (2) the link bender bends an end of the bar 180 degrees, then laces or inserts this link into an already manufactured link and forms the bar into a "C" with its two ends abutting; (3) the electric flash welder electrically welds the abutting ends of the "C"-shaped link together into a hot-welded closed link; (4) the clamping device holds the welded link while the extruded metal on the closed link is clipped off by a pneumatic hand-operated chisel which produces a smooth surface around the welded area; and (5) the hydraulically operated stud press contains shaped dies into which the link sides are squeezed until they set the ends of a steel crossbar or stud into position across the center of the link where the weld has been made. This stud is further reinforced by locking protuberances on each end which penetrate into the hot link sides during the squeezing operation. This operation not only adds the studs which prevent the kinking of the chain during its use but also gives the final shape to the anchor chain link.

The five machines imported in the second shipment are dedicated to the production of anchor chains and there is no other known use for these machines except in conjunction with each other in an integrated operation. The transporting equipment imported in the first shipment is also an integral part of the manufacturing process and without it the other machines could not produce the anchor chain.

The first issue against this background is whether all these machines—though they perform diverse functions—are to be considered electrical welding apparatus under the provisions of paragraph 353. The same issue was decided in *United States* v. *Mannesmann-Meer, Inc.*, 54 CCPA 24, C.A.D. 897 (1966), under a very similar set of facts. In that case, machinery consisting of (1) a forming mill, (2) a welding table, (3) a cooling mill, (4) a sizing mill, (5) a cutoff device, and (6) a storage bin was held to constitute an entirety properly classifiable under the provisions for electrical welding apparatus in paragraph 353. The court reasoned that based upon certain defini-

tions of the word "apparatus" cited in *United States* v. *Wyman & Co.*, 2 Ct. Cust. Appls. 440, T.D. 32200 (1912),[2] it was clear that by using the term "apparatus" in paragraph 353, as modified, Congress intended "to include every kind and type of electrical welding equipment, whether it be a welding tool, a machine, or a collection of machinery designed to be used together for a specific purpose," (id. at 26) and that the word " 'apparatus' embraces the term 'machinery' and that the latter imports a broad and more comprehensive concept than the term 'machine.' " Id. at 27. The court added (id. at 27):

> The record clearly discloses that the apparatus under consideration was designed and used as a composite unit with the single purpose of taking raw material and producing therefrom a finished product, viz. a welded tube. To this end, the composite elements or parts functioned in combination. Without each successive part taking the basic material from its predecessor in the continuous process of manufacture, the apparatus would not execute its end purpose of producing a finished welded product. It was on this basis that the Customs Court, correctly we think, treated the apparatus as an entirety for tariff purposes in its application and construction of paragraph 353 as modified by T.D. 54108.

Thus by virtue of the holding in *Mannesmann-Meer*, there can be no doubt that the imported equipment would be an entirety if all the machines were imported together in one shipment.[3] However, as already discussed, the transport equipment was imported in a separate shipment from the other five machines and is thereby precluded from being considered with that equipment to form an entirety. This leaves for decision the issue of whether the five imported machines covered by the second shipment constitute an entirety for tariff purposes without the transport equipment.

The pertinent provision of paragraph 353 reads: "Electrical * * * welding * * * apparatus * * * finished or *unfinished*, wholly or in

---

[2] The *Wyman* case defined "apparatus" as follows (2 Ct. Cust. Appls. 443):

The word "apparatus" is defined by the Century Dictionary as—

An equipment of things provided and adapted as a means to some end; especially, a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc.; as, chemical, philosophical, or surgical apparatus.

The definition of "apparatus" in Webster's New International Dictionary is as follows:
2. Things provided as means to some end.
3. Hence: A collection or set of implements, or utensils, for a given work, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism.

[3] We reject defendant's assertion that this case is distinguishable from *Mannesmann-Meer* on the ground that here the links when bent into shape form a chain and, therefore, the welding process is not essential to the manufacture of the chain. In the absence of a showing that unwelded chains of this type and size have any use or function, we cannot consider the unwelded product to be a commercial entity—it is certainly not welded anchor chain.

chief value of metal,[4] and not specially provided for." [Emphasis added.] The key word here is "unfinished."

As we have seen, the five machines are dedicated to use for producing heavy anchor chain by an electrical welding process. The fact that the transport equipment was not imported contemporaneously does not change its character in that respect. This being the situation, it is clear that the five machines together are an unfinished electrical welding apparatus which form an entirety for tariff purposes. As stated in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 315, C.D. 1619 (1954):

> * * * [I]f there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

Put otherwise, the language of paragraph 353 specifically provides for unfinished electrical welding apparatus and there is no question that the five machines imported in the second shipment come squarely within this provision as an entirety rather than under the parts provision of paragraph 353 or the *eo nomine* provisions for the individual components. A parallel situation would be the importation of a bicycle which is complete in every respect except for the rubber tires that are imported in a separate shipment. As is the case here, it is obvious that the article is so far advanced that it would be classified as a bicycle; it would not be classified as parts of bicycles or under the provisions for such parts (such as gears, chains, articles of metal, glass, leather and rubber nspf) since it has reached the point where it has become that article in name and character. See e.g., *Redden & Martin* v. *United States*, 5 Ct. Cust. Appls. 485, 487, T.D. 35147 (1915); *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, 21, T.D. 37161 (1917). Cf. *Pacific Fast Mail, Inc., et al.* v. *United States*, 63 Cust. Ct. 468, C.D. 3938 (slip op. Dec. 4, 1969, pp. 8–9).[5]

Summing up, the five machines imported in the second shipment constitute an entirety for tariff purposes, i.e., an unfinished electrical welding apparatus dutiable under the provisions therefor in paragraph 353, at a rate of 11 percent.

The remaining problem is to determine the proper classification of the transport equipment system which was shipped separately from

---

[4] The parties agree that all the items here involved are in chief value of metal.

[5] Even in the absence of statutory language providing for the unfinished article, this court has held that an article minus essential integral parts was in certain circumstances classifiable under the *eo nomine* provision for the entire article rather than as a part. Thus in *William M. Barber et al.* v. *United States*, 6 Cust. Ct. 340, C.D. 492 (1941), motorboats without the motors were classified as motorboats under the "old act."

the five machines. As previously discussed, this protest (62/8017) is sufficient in claiming classification under the parts provision of paragraph 353. This consideration aside, the record shows that this transport equipment is part of and dedicated to use with electrical welding apparatus. See e.g., *Mattel, Inc.* v. *United States*, 61 Cust. Ct. 75, 82–84, C.D. 3531, 287 F. Supp. 999, 1004–06 (1968). Nevertheless defendant insists that the equipment is not classifiable as a part of such apparatus on the ground that an *eo nomine* provision is more specific than a parts provision and hence will prevail over the latter. There is a basic difficulty, however, with the premise of the argument. The difficulty is that the provision under which the transport equipment was classified— "articles having as an essential feature an electrical element or device * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for * * * other"—is not an *eo nomine* provision.

In conclusion, we hold that the transport equipment, shipped separately and covered by protest 62/8017, is dutiable at 11 percent ad valorem under the provision of paragraph 353 for "[p]arts * * * of articles * * * other." This protest is therefore sustained and judgment will be entered accordingly. As to the second protest (62/10442), a different situation is presented. For in that case the appraisements were based on the separate values found for each component and the entry was liquidated accordingly. However, since the court now holds that the components—which were appraised separately—actually constitute an entirety, it is manifest that the separate appraisements are invalid and the liquidation is void. See *Castelazo & Associates et al.* v. *United States*, 62 Cust. Ct. 148, C.D. 3707, 296 F. Supp. 25 (1969), and cases cited therein. We, therefore, dismiss the second protest as being premature and remand it, pursuant to 28 U.S.C. § 2636(d), to a single judge to determine the proper dutiable value of the electrical welding apparatus as an entirety. Judgment to this effect will issue.